IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

VESSIE LYNN LEE                                                                PETITIONER

VS.                                 CIVIL ACTION NO 3:07cv539-DPJ-JCS

CHRISTOPHER EPPS,
COMMISSIONER, MISSISSIPPI
DEPARTMENT OF CORRECTIONS                          RESPONDENT

## **REPORT AND RECOMMENDATION**

This cause is before the court on the petition for writ of habeas corpus filed by Vessie Lynn Lee, a state prisoner. Having considered the petition, response, rebuttal, and state court record, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.

### **I. Facts and Procedural History**

On May 8, 2002, J.R.G, a thirteen-year-old female, accused Vessie Lynn Lee, a neighbor, of sexually abusing her over the preceding nine months. She alleged that Lee had forced her to perform sexual acts which included several incidents of oral sex and two incidents of sexual intercourse. Lee was indicted in the Circuit Court of Madison County, Mississippi and charged with two counts of statutory rape, four counts of sexual battery, and four counts of gratification of lust. The court entered an order of *nolle prosequi* on one count of gratification of lust, and Lee was tried on the remaining nine counts.

The primary evidence presented against Lee at trial was the lengthy, detailed testimony of J.R.G, who was fourteen years of age at the time of the trial. She testified

that she lived several houses down from Lee in a subdivision in Madison, Mississippi and often babysat and played with his young children. At the beginning of J.R.G.'s seventh-grade year in school, when she was twelve years old, Lee began enticing her into his house or garage and making sexual advances to her, often after meeting her when she got off the school bus in the afternoons. These began as incidents of sexual touching but eventually progressed to oral sex and intercourse. J.R.G. testified that she was intimidated by Lee and that he discouraged her from telling anyone by saying that no one would believe her, and that if she said anything he would kill himself and that his young children, of whom J.R.G. was very fond, would "lose their daddy." On May 8, 2002, J.R.G.'s track coach observed her crying at school one afternoon and began questioning her. J.R.G. told him about the assaults, and Lee was arrested the next day.

J.R.G. testified in detail about each of the alleged incidents. Although she was uncertain about exact dates, she gave details about both the time periods and the specifics of the encounters. She also referenced two items which she saw during the encounters - a pink vibrator and zebra-striped thong underwear worn by Lee - and described identifying features of Lee's abdomen and genital area. A vibrator and thong underwear matching her description, seized during a search of Lee's home, were admitted into evidence, as was a photograph of his abdominal and genital area, which was also consistent with J.R.G,'s descriptions.

The prosecution also relied upon the testimony of Connie Evans, a neighbor, and Larry McDonald, the driver of the school bus which J.R.G. rode home from school each day during the months of the alleged assaults. Evans testified that she sometimes saw

Lee approaching J.R.G. and the other children when they got off the school bus in the afternoons and also saw J.R.G. go alone with Lee to Lee's home on occasion. McDonald testified that there were occasions when he would see Lee outside of his home in the afternoons when he made the stop to let J.R.G. and the other neighborhood children off of the bus.

Lee 's defense in large part consisted of numerous alibi witnesses who testified concerning mostly business-related encounters with Lee on or around the times of the alleged incidents. However, the combined effect of J.R.G.'s inability to pinpoint exact times and dates and her testimony that the encounters often lasted only a few minutes rendered the alibi testimony only marginally helpful to his defense. Lee also offered his own testimony at trial. He gave detailed accounts of his activities and whereabouts around the times of the alleged incidents in an attempt to establish that he could not have been at home when the crimes allegedly occurred. Petitioner's wife, Beth Lee, testified on Lee's behalf. Mrs. Lee denied the possibility of her husband having been home alone in the afternoons at the time of the alleged incidents. She also testified as to occasions when J.R.G was in their home and would have had an opportunity to see the pink vibrator and thong underwear described by her to the police and seized in the search.

The jury convicted Lee on all counts. He was sentenced to serve a term of life on the two statutory rape counts, thirty years each on the sexual battery counts, and fifteen years on each of the gratification of lust counts. His conviction and sentence were affirmed by the Court of Appeals and the Mississippi Supreme Court. He subsequently sought post-conviction relief in state court; this was denied. He now seeks relief pursuant

to 28 U.S.C. § 2254, alleging the following grounds:

1. That the state failed to meet its burden of proof as to each count of the indictment;

2. That he was denied a fair trial by the trial court's exclusion of evidence which would have impeached the testimony of Connie Evans;

3. That his trial and appellate counsel rendered ineffective assistance in failing to adequately preserve the issues in grounds one and two; and

4. That he received ineffective assistance of counsel regarding his motion to suppress evidence seized during a search of his home.

## II. Analysis

As his first ground for relief, Lee argues that the evidence was insufficient to support the verdict. In denying post-conviction relief, the state supreme court rejected this and the impeachment argument set forth above as ground two, stating that these two claims "either were raised at trial and on appeal or were capable of being raised then" and were therefore procedurally barred pursuant to Miss. Code Ann. § 99-39-21. The court went on to state, however, that notwithstanding the procedural bar, the court found these claims to be without merit. Although the court did not specify which upon which subsection of section 99-39-21 it was relying in rejecting the insufficiency claim, the record is clear that this claim was not raised in any manner on direct appeal. Thus, the only logical reading on the Mississippi Supreme Court's order is that this claim was rejected as procedurally barred pursuant to subsection (1) of the statute, *i.e.*, because it had been waived by Lee's failure to raise it on direct appeal.[1] As a general rule, a federal

---

[1] Section 99-39-21(1) of Mississippi's post-conviction relief statute provides that "[f]ailure by a prisoner to raise objections, defenses, claims, questions, issues or

4

habeas court may not consider a claim that the last state court considering the claim rejected on the basis of an adequate and independent state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 729-32; *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004). Lee has offered no argument as to why this claim should be considered in spite of the procedural bar. Accordingly, habeas review of the merits of this claim is unavailable.[2]

As his second ground for habeas relief, Petitioner contends that he was denied a fair trial by the trial court's exclusion of extrinsic evidence which would have impeached Connie Evans, a prosecution witness. Connie Evans was a neighbor of both J.R.G. and Petitioner. She routinely arrived home from work about ten minutes until 3:00 p.m. on school days. Evans testified that initially she noticed that on a couple of occasions Petitioner approached J.R.G. and the other neighborhood girls when they got off the school bus in the afternoon. On these occasions, the other girls would go to their homes, but J.R.G. would walk with Lee towards the garage of his home. Then during one

---

errors either in fact or law which were capable of determination at trial and/or on direct appeal . . . shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver." Subsection (3) of the statute provides that the doctrine of *res judicata* applies to post-conviction review of claims which were decided at trial and on direct appeal. The state supreme court often, as it did in this case, refers to claims barred under subsection (3) as "procedurally barred." Obviously, however, such claims are not procedurally barred within the meaning of *Coleman v. Thompson*, 501 U.S. 722 (1991) and its progeny, since they have in fact previously been considered on the merits by the state court. In short, federal review is available for claims held by the state court to be "barred" pursuant to subsection (3).

[2]Because the state court clearly rejected this claim on procedural grounds, it is barred from federal habeas review even though the court alternatively rejected it on the merits. *See Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

5

particular week she observed J.R.G. go alone with Lee to his home after school for all five days. She became so concerned that she called the mother of one of the other girls to ask if her daughter had ever mentioned anything about this. On cross-examination, defense counsel asked Evans if she had ever had a conversation with Beth Lee, Petitioner's wife, in which Evans stated that she did not trust men because Evans' daughter had been sexually molested by Evans' ex-husband. Evans denied making such a statement to Beth Lee, stating that she "would never discuss that with anyone but [her] family," and went on to admit that she had in fact discussed the molestation with her family. Evans also testified on redirect that she did not think that J.R.G. would have made up the allegations against Lee.

During direct examination of Beth Lee, defense counsel attempted to elicit testimony from Beth Lee that Evans had in fact told her that she did not trust men because her daughter had been molested by her ex-husband. The trial judge refused to allow this testimony into evidence. Petitioner claims that he was denied a fair trial by the trial court's exclusion of the testimony.

In considering this claim on direct appeal, the Mississippi Supreme Court analyzed the exclusion of the evidence primarily in terms of whether it constituted proper extrinsic impeachment evidence under Rule 613(b) of the Mississippi Rules of Evidence. The court observed that Evans never denied that her daughter had been molested or that she distrusted men. In fact, defense counsel never questioned her about whether the molestation occurred or whether she was biased against men. She simply denied that she had ever discussed these matters with Beth Lee. The state court reasoned that

6

because this denial was the only prior inconsistent statement which could have been impeached by the extrinsic evidence of Beth Lee's testimony, exclusion was proper because the issue of whether Evans ever made these statements to Lee was collateral in that it was not directly relevant to the issues in the case.

It is unnecessary for this court to decide whether the trial court committed error under state evidentiary law in excluding Beth Lee's testimony. Even assuming that the ruling was incorrect, federal habeas relief is available only if the exclusion of this testimony violated a specific constitutional right or was so egregious that it rendered Lee's trial fundamentally unfair. *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). A due process violation arises from exclusion of evidence only if the excluded evidence "is a crucial, critical, highly significant factor in the context of the entire trial." *Johnson v. Puckett*, F.3d 809, 821 (5th Cir. 1999). In the present case, this analysis requires, in turn, an examination of the importance of the testimony of Connie Evans. Certainly, Evans' testimony was helpful to the prosecution, in that it corroborated J.R.G.'s testimony that Lee approached her when she got off the school bus in the afternoons. Evans also bolstered the prosecution's case with her opinion as to J.R.G.'s credibility. But, given the other evidence presented by the prosecution, particularly the detailed, lengthy testimony of the victim,[3] Evans' testimony was not so essential to the prosecution's case that evidence tending to show that she lied in denying the conversation with Beth Lee would have been a "crucial, critical, highly significant factor in the context of the entire trial."

---

[3]The trial judge commented at sentencing, outside the presence of the jury, that J.R.G.'s testimony was "probably the most credible testimony the Court has ever heard."

7

The undersigned concludes that Lee was denied not his due process right to a fair trial by the exclusion of this testimony. No habeas relief is warranted on this claim.[4]

Petitioner's remaining claims were previously presented to and adjudicated on the merits by the state court within the meaning of 28 U.S.C. § 2554(d) in Lee's application for post-conviction relief. They are therefore subject to the standard of review of § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The two prongs of § 2254(d)(1) are to be accorded independent meaning; relief may be granted if the prisoner satisfies either prong. *Gardner v. Johnson*,

---

[4]In his answer, Respondent has not claimed the benefits of the § 2254(d)'s deferential standard of review with regard to this claim. This failure is perhaps due to the fact that there is some question as to whether Lee clearly raised this particular constitutional issue on his direct appeal such that the supreme court's opinion affirming his conviction can be considered an adjudication on the merits of this claim. This ambiguity is not clarified by the supreme court's rejection of the claim on post-conviction review as barred, because, as is set forth in the discussion of the first ground for relief *supra*, the supreme court did not specify whether this claim was barred because it was raised on appeal or, alternatively, because it could have been. If it was not presented to the state court, then this court must conclude that it was rejected on post-conviction review as having been waived and therefore procedurally barred pursuant to Miss. Code Ann. § 99-39-21(1). If that is the case, it is procedurally barred in this court. In any event, both substantive and procedural analyses of this claim lead to the conclusion that habeas relief is unavailable.

8

247 F.3d 551 (5th Cir. 2001).   Under the "contrary to" prong, relief may be granted if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application" clause, a federal court may grant the writ if the state court identifies the correct governing legal principle set forth by the Supreme Court but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 413.  "Unreasonable application" means that the state court decision is not only erroneous but is also objectively unreasonable; relief cannot be granted in a case where the state court's application of  Supreme Court law is merely erroneous. *Id.* at 409-10.  Thus, the ultimate issue before this court is not the  constitutional merits of these claims, but whether the results reached by the state court in adjudicating them were contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law or were based upon an unreasonable determination of the facts.

All of Petitioner's remaining claims consist of allegations of ineffective assistance of counsel.  Ineffective assistance claims are analyzed under the familiar two-prong analysis of *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that his attorney's performance was deficient.  *Strickland*, 466 U.S at 688.  "Deficient" means that counsel's performance was "outside the wide range of professionally competent assistance." *Id.* at 690.  If a petitioner succeeds in establishing deficiency on his counsel's part, then he must go on to demonstrate that his attorney's deficient performance prejudiced the defense such that "there is a reasonable probability that, but

9

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The standard of review of an attorney's performance is "highly deferential," and a court considering an ineffectiveness claim is to "indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Id.* at 689. Moreover, this standard of review becomes even more deferential when viewed through the lens of § 2254(d). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009). Thus, review of ineffective assistance claims under § 2254(d)(1) is "doubly deferential." *Id.*

### ***Ineffective Assistance of Counsel in Failing to Preserve Issues***

As his first allegation of ineffective assistance, Lee contends that his trial attorney failed to specifically articulate in his motion for a directed verdict his federal constitutional claim that the evidence was insufficient to support the verdict because of the state's failure to prove beyond a reasonable doubt the dates of each alleged crime. He complains that as a result of this failure, this issue was not properly preserved for appeal. Petitioner also alleges that his appellate attorney rendered ineffective assistance in failing to properly present this issue. The standard for determining whether the evidence is constitutionally sufficient to support a verdict is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, a starting point for Lee in attempting to allege deficient

10

performance on the part of his attorneys is to establish some basis for an argument that the verdict in his case did not meet this standard. Petitioner assumes, without offering any supporting case law or argument, that the dates of the alleged crimes were essential elements thereof. Mississippi law is clear that this is not the case. In *Morris v. State*, 595 So. 2d 840 (Miss. 1992),the defendant argued that an indictment charging him with sexual abuse of a child was insufficient because of its failure to state the exact dates of the offenses. The Mississippi Supreme Court, in rejecting this argument, stated that "[t]raditionally, time and place have been viewed as not requiring considerable specificity *because they ordinarily do not involve proof of an element of crime." Id*. at 842 (emphasis added) (citing 2. W. LaFave & L. Israel, Criminal Procedure § 19.2 (1984)). The court went on to observe that the prosecution is not required to prove that the crime occurred on the specific date alleged in the indictment. *Id*. Thus, Lee had no meritorious *Jackson v. Virginia* claim. Therefore, his counsel cannot be faulted for failing to present such a claim either at the trial or appellate level. The state court's rejection of this claim was not unreasonable, and consequently, no habeas relief is warranted.[5]

Petitioner also faults his attorneys for failing to adequately preserve and present the claim set forth as ground two in the present petition, *i.e.,* that his right to a fair trial was violated by the exclusion of Beth Lee's testimony concerning her conversation with

---

[5]Petitioner makes brief reference to another insufficiency argument with regard to one of the sexual battery counts. According to Lee, there was insufficient evidence for a conviction on Count VI for sexual battery on or about August 30, 2001, because J.R.G. testified that during this incident there was no penetration, an essential element of the crime. This argument is based upon a misrepresentation of the victim's testimony. J.R.G. testified that sometime around August 27, 2001, Lee forced her to perform oral sex on him. Tr. 311-17.

11

Connie Evans. The undersigned has already concluded that the underlying constitutional claim is without merit. It follows that Lee's attorneys did not render deficient performance in failing to adequately preserve or argue this ground for relief.

### *Ineffective Assistance of Counsel Regarding Motion to Suppress*

In ground four, Lee makes two ineffective assistance arguments concerning his pre-trial motion to suppress the pink vibrator and the zebra-print thong underwear seized during the search of his home. Lee's attorneys attacked this evidence at trial and on appeal by arguing that the affidavit and search warrant were legally defective because the minor victim's allegations were uncorroborated. However, copies of the search warrant and supporting affidavit were never included in the record, either at trial or on appeal. Lee argues that his attorneys may have been successful on their corroboration argument if these items had been concluded.

This ground for relief fails on two fronts. First of all, there was no meritorious corroboration issue. Nothing in the applicable law supported an argument that a minor victim's allegations must be corroborated in order to support a finding of probable cause. The Mississippi Court Appeals recognized this on appeal, stating that under *Walker v. State*, 473 So.2d 435 (Miss. 1985), "when information is furnished by an eyewitness rather than an informant, there is no need to show the party supplying the information was a credible person." *Walker*, 473 So. 2d at 438-39. This holding is consistent with *Illinois v. Gates*, 462 U.S. 213 (1983), the case relied upon by Petitioner in support of his corroboration argument. In *Gates,* Illinois police received an anonymous letter stating that a local couple were routinely smuggling drugs from Florida to Illinois pursuant to a

scheme whereby the wife would drive to Florida and have her car loaded with drugs, after which the husband would fly to Florida to meet her and drive the car back to Illinois. The letter also stated that the wife would be driving to Florida for this purpose on May 3. The letter contained nothing to indicate that the author was truthful or reliable. However, a police officer subsequently verified that the husband was booked on a flight to Florida for May 5, and surveillance of the trip revealed actions on the part of the couple which conformed to the predictions in the letter. The Supreme Court acknowledged that under a "totality of the circumstances" approach to determining probable cause, the anonymous letter was insufficient to provide a basis for a search warrant of the couple's home and automobile. However, the Court concluded that the subsequent investigation and surveillance by the police provided sufficient corroboration of the letter. Nothing in Gates, however, suggests that information from a single informant must *always* be corroborated with additional outside information, especially when the informant is an eyewitness victim of the alleged crime. Indeed, under the "totality of the circumstances" approach adopted in *Gates,* the information from J.R.G., the purported eyewitness and victim of sexual crimes, was clearly sufficient to establish probable cause.

Furthermore, Lee has wholly failed to establish any basis for an argument that J.R.G.'s information was unreliable for purposes of establishing probable cause. And although he claims that inclusion of the warrant and affidavit in the record would have supported his attack of the evidence seized, he has failed to identify any specific statement or item in the affidavit or warrant which would have indicated that J.R.G.'s information was unreliable. Because Petitioner has failed to establish that there was any

13

further corroboration required under the law or that there was any specific problem with the affidavit and warrant, he has failed to establish any deficiency on the part of his attorney in failing adequately to argue that further corroboration was needed or in failing to include the affidavit and warrant in the record.

Lee also contends that his trial and appellate counsel rendered ineffective assistance in failing to challenge the admissibility of the vibrator and thong underwear under the "fruit of the poisonous tree" doctrine of *Edwards v. Arizona*, 451 U.S. 477 (1981) and *Wong Sun v. United States*, 371 U.S. 471 (1963). Lee's theory is that these items should have been suppressed because they were obtained as a result of impermissible questioning of Lee during the search of his home and that his counsel was deficient for failing to make this argument.

Lee was arrested on May 9, 2002. According to Lee, he was read his *Miranda* rights and initially waived those rights.[6] However, after Officer Eddie Lawrence began questioning him, Lee invoked his right to counsel, and the interrogation ceased. Lee was apparently released from custody that same day. On the following day a search of Lee's home was conducted by Officer Lawrence and two other officers. The search warrant described the items for which the search was to be conducted as a pink vibrator, thong underwear with black-and-white-zebra print, pornographic magazines, and adult

---

[6]Many of facts as set forth here are not set out in detail anywhere in the trial record nor in the Petition. Neither has Lee supported his Petition with any affidavit. However, he did include an affidavit with his state court application for post-conviction relief. Because this court's consideration of this particular claim is limited to whether the state court's decision was unreasonable in light of the evidence presented in the state court proceeding, *see* 28 U.S.C. § 2254(d), the facts set out in that affidavit are considered here.

14

videotapes. Lee was at home during the search. According to Lee, Officer Lawrence repeatedly asked him questions about the location of the items described in the warrant. Lee asked if his attorney could be present, but Officer Lawrence informed him that he had nothing to worry about and that his attorney had no part in the search. Lee ultimately directed the officers to the location of the vibrator and handed them the thong underwear. He states that he did this because he felt threatened and intimidated and was afraid he would be returned to jail if he did not cooperate.

Once someone accused of a crime has invoked his right to counsel, he cannot be questioned further while in custody until counsel is made available, unless the accused is the one who initiates further communication. *Edwards v. Arizona*, 451 U.S. 477 (1981). The Supreme Court has never, however, extended this rule to *noncustodial* interrogation. Indeed, the Court recently explained In *Montejo v. Louisiana*, 129 S.Ct. 2079 (2009), that the *Edwards* rule applies only to custodial interrogation, not to other situations in which law enforcement authorities have contact with the defendant, such as a police line-up, because in non-custodial situations the defendant remains in control and is free to walk away. *Montejo,* 129 S.Ct. at 2090. No matter what Lee may have perceived or felt, he was in fact free to "walk away to avoid police badgering," *see id.* at 2090, during the search. Thus, Lee's attorneys would have had no legal basis for making a "fruit of the poisonous tree" argument, and their failure to do so cannot be considered deficient performance under *Strickland*. The state court's rejection of this ineffective assistance claim was not objectively unreasonable.

### III. Conclusion

In summary, Lee's claim under *Jackson v. Virginia* is procedurally barred. He has failed to establish a constitutional violation resulting from the exclusion of Beth Lee's testimony regarding her conversation with Connie Evans. As to the remainder of his claims, Petitioner has failed to establish that the state court's rejection of them was objectively unreasonable. Accordingly, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice. The parties are hereby notified that failure to file written objections to the findings and recommendations contained in this report by August 24, 2009, will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; *Douglass v. United Service Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted, this the 6th day of August, 2009.

/s/ James C. Sumner
UNITED STATES MAGISTRATE JUDGE